NELLIE CALLAHAN SCHOLARSHIP FUND, A TRUST UNDER THE WILL OF NELLIE CALLAHAN, DECEASED, TRUSTEES LARRY JACKSON, KENNETH BASSETT, CLIFFORD SCHOLTEN, SHIRLEY A. WEBSTER, AND IOWA-DES MOINES NATIONAL BANK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9512–77X.     Filed January 3, 1980.

*G. Stephen Walters,* for the petitioner.
*Virginia C. Schmid, David L. Jordan, Bernard B. Kornmehl,* and *Henry G. Salamy,* for the respondent.

OPINION

NIMS, *Judge:*\* Respondent determined that petitioner is a private foundation as defined in section 509(a), I.R.C. 1954.[1] The petitioner has invoked the jurisdiction of this Court, pursuant to section 7428, for a declaratory judgment that it is a supporting organization as described in section 509(a)(3) and therefore not a private foundation. Petitioner has satisfied the prerequisites for this declaratory judgment action: it has exhausted its administrative remedies, section 7428(b)(2); it is the organization the classification of which is at issue, section 7428(b)(1); and it filed its petition in a timely fashion, section 7428(b)(3). The case was submitted upon the basis of the pleadings, petitioner's oral argument presented at the hearing, and the facts recited in the administrative record (which the parties have stipulated). The latter are assumed to be true for the purposes of this decision. See Rule 217, Tax Court Rules of Practice and Procedure.

Petitioner (sometimes referred to herein as the fund), an organization described in section 501(c)(3) and exempt from taxation under section 501(a), is a testamentary trust whose principal office, at the time of filing the petition herein, was c/o Shirley A. Webster, Farmers & Merchants State Bank Building, Winterset, Iowa. Petitioner filed its Application for Recognition of Exemption (Form 1023) with the Internal Revenue Service in Des Moines, Iowa.

The principal issue for our decision is whether petitioner, as created under the Will of Nellie Callahan, deceased, failed to satisfy the requirements for exception from private foundation status under section 509(a)(3) because it was not operated, supervised, or controlled by or in connection with one or more organizations described in paragraphs (1) and (2) of section 509(a), as required by section 509(a)(3)(B). In the event this issue is decided adversely to the petitioner, a second issue is whether petitioner's private foundation status ceased, assuming defects in its organization and operation were cured, in the absence of complying with the formal termination procedures imposed by section 507 and the regulations thereunder.

Petitioner was created under the Will of Nellie Callahan and

---

\* This case was submitted for our decision at a hearing before Judge Darrell D. Wiles and was reassigned to Judge Arthur L. Nims III by order of the Court dated July 18, 1979.

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, except as otherwise expressly indicated.

received its initial funding from her estate on August 25, 1967. Under the terms of the will, the original trustees were Robert O. Frederick of Winterset, Iowa, and the Iowa-Des Moines National Bank.

Article IV of the decedent's will provides in pertinent part as follows:

Subject to the above and after payment of the costs of administration of my estate and such taxes as may be payable from my estate, I give, devise and bequeath all of the property, real and personal, which I may own at the time of my death, to Iowa-Des Moines National Bank of Des Moines, Iowa, and Robert O. Frederick of Winterset, Iowa, as trustees to be by them managed, administered and the principal thereof and the income therefrom held and distributed in accordance with the following provisions:

A. Said trust estate shall be known as the NELLIE CALLAHAN SCHOLARSHIP FUND.

B. Said trustees shall use the income from said trust fund each year to finance, or aid in financing, the education of a pupil, or pupils, selected from the graduating class from the Winterset Community High School of Winterset, Iowa, which pupil, or pupils, shall be selected by a committee of three (3) persons, to-wit: The president of said school board, the superintendent of said school district and the principal of said high school. The selection of the graduate, or graduates, shall be made by said committee of three, taking into consideration the student's qualifications and capabilities for mental advancement and the financial need of said student. Said selection shall be made by said committee without regard to the sex or religious beliefs of the student involved. It is my intention that funds from this trust shall be made available to provide, or assist in providing, for educational opportunities for those students who might otherwise be unable to continue their education.

C. The trustees, from year to year, shall, in their discretion, determine the amount of the scholarship, or scholarships, to be awarded which in any event shall not exceed One Thousand Dollars ($1,000) for any year for any one recipient.

D. The recipients of the scholarship shall be entitled to said scholarship, in the discretion of the trustees, for a period of not to exceed two (2) years, providing said recipients maintain satisfactory grades or reports of progress in the field of education or training which they have chosen.

E. It is further provided that the funds herein shall be used to assist any of the eligible and selected graduates in attending any college or university, business training, mechanical or technical training offered by any recognized educational institution within the state of Iowa.

F. The committee and the trustees herein, in the selection of the recipients and in the determination of the amount to be available, shall consider the probabilities of said recipient completing his chosen training, or educational program, in order to assure themselves that the recipient chosen shall be able to complete his chosen training, or education.

G. The amount of the scholarship to be awarded annually may, at the election of the recipient, be spread over a period of more than two (2) years by

said recipient electing to divide the two-year award over a longer period. Said recipient may either administer the award himself over a longer period or may request the trustees herein to divide the award over a longer period than two years.

H. It is further provided that the number of recipients who shall at any one time participate in the benefits of this trust fund shall be determined by the trustees in accordance with the amount of income available and with the consideration and care being used by said trustee so that no graduate will be started on any course of education, or training, without reasonable prospect of funds being available for the payment from this fund on a basis of two years' training, or education. In the event there is not sufficient income in any given year to permit the continuation of prior awards as well as the awarding of current scholarships, the trustees herein should then either reduce the awards made currently or discontinue the current year's award so that as not to jeopardize the recipients already receiving said awards.

I. It is further provided that in the event any student who has been selected to receive benefits from this trust fund dies, or in any manner becomes unable to either commence or continue his course of study, or training, or in the event the trustees herein determine that a student already selected is not qualified to continue his course of training, said trustees shall determine, in their own discretion, whether a successor should be chosen to receive the benefits left available by the death or disqualification, and if so, shall notify the committee to make such alternate selection immediately.

Article V of the will vested in the trustees the customary powers of a testamentary trustee. Nothing is contained in article V or in any other provision of the will which would vest in the committee of three referred to in paragraph B of article IV the powers and duties of such a trustee.

The fund has granted scholarships to at least the following number of individuals since the fund's inception, in amounts ranging from $500 to $2,000 (those grants of $2,000 being paid on a $1,000 per year basis):

| Year | Number of recipients | Year | Number of recipients |
|------|------|------|------|
| 1967 | 2 | 1972 | 7 |
| 1968 | 4 | 1973 | 7 |
| 1969 | 4 | 1974 | 12 |
| 1970 | 3 | 1975 | 8 |
| 1971 | 6 | Total | 53 |

Article VI of the decedent's will provided that vacancies in the

trusteeship would be filled by a nominee of the District Court of the State of Iowa, "in and for Madison County."

On April 6, 1976, the District Court of Iowa, Madison County, on the application of the two then-acting trustees, issued an order (the order) whereby Larry Jackson, president of the Winterset Community School Board, K. G. Bassett, superintendent, Winterset Community School District, and Clifford Scholten, principal, Winterset Community High School, were appointed as additional trustees of the fund. However, at no time prior to the issue of the final adverse determination letter by the Internal Revenue Service to the fund, which was dated June 17, 1977, did the trustees notify the Internal Revenue Service pursuant to the notification procedures contained in section 507(a)(1) of any intent to terminate the fund's status as a private foundation.[2]

The Winterset Community High School serves a community which had a population of 3,686 in 1978.

The decedent's will was executed on October 5, 1964, which was well before the Tax Reform Act of 1969 began imposing stringent requirements on private foundations. Under the law of Iowa, the fund was required to, and did, file annual reports of the trustees to the District Court of Iowa, Madison County. These reports have at all times been available to the school officials, the public, and the press in the office of the Madison County Clerk of Court. See Iowa Code ch. 68(A) (West 1973). In addition, the trustees' investments are limited by the Model Prudent Person Investment Act which is in effect in Iowa. Iowa Code sec. 633.123 (West 1964).

Petitioner contends that it is not a private foundation because it is a supporting organization within the meaning of section 509(a)(3). Petitioner's position is that while the school officials were not named as trustees, they were de facto trustees, thus establishing the necessary relationship between the Winterset Community High School and the fund. Petitioner further contends that the order (whereby the three school officials were added as trustees) cured any defect that may have originally existed and that petitioner should thus be recognized as a supporting organization as of and from the date of the order.

---

[2]In Form 1023, Application for Recognition of Exemption, dated Jan. 9, 1976, petitioner's trustee, Shirley Webster, indicated that the trust was not a private foundation and requested a definitive ruling as to the trust's status under sec. 509.

Respondent contends that petitioner has been, from its inception, a private foundation because it failed to meet the provisions of section 509(a)(3)(B) in that it was not operated, supervised, or controlled by or in connection with the Winterset Community High School, as those terms are defined by the relevant Treasury regulations. Respondent further contends that, assuming arguendo the order "cured" the defect in the petitioner's organization and operation, nevertheless petitioner's status as a private foundation cannot be changed unless and until it follows the formal requirements for termination provided by section 507(a)(1).

Section 509(a) provides, in pertinent part, as follows:

SEC. 509. PRIVATE FOUNDATION DEFINED.

(a) GENERAL RULE.—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

      \*      \*      \*      \*      \*      \*      \*

(3) an organization which—

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),[3]

(B) is operated, supervised, or controlled by or in connection with one or more organizations, described in paragraph (1) or (2), and

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2);
\* \* \*

---

[3]Pars. (1) and (2) of sec. 509(a) provide:

(1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii));

(2) an organization which—

(A) normally receives more than one-third of its support in each taxable year from any combination of—

(i) gifts, grants, contributions, or membership fees, and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,

from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and

(B) normally receives not more than one-third of its support in each taxable year from the sum of—

(i) gross investment income (as defined in subsection (e)) and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511; \* \* \*

Respondent's determination that petitioner was a private foundation was based exclusively upon a finding that the requirements of section 509(a)(3)(B) had not been satisfied. There is no contention that petitioner has failed the organizational or operational tests of section 509(a)(3)(A). Cf. *Goodspeed Scholarship Fund v. Commissioner*, 70 T.C. 515 (1978); *Quarrie Charitable Fund v. Commissioner*, 70 T.C. 182 (1978), affd. 603 F.2d 1274 (7th Cir. 1979).

Section 509(a)(3)(B) describes the nature of the relationship which must exist between the organization seeking exception from private foundation status as a supporting organization and one or more publicly supported organizations.[4] The requirement of section 509(a)(3)(B) is elaborated upon by section 1.509(a)–4, Income Tax Regs., in which the relationships are divided into three categories. The supporting organization must be:

(i) Operated, supervised, or controlled by,

(ii) *Supervised or controlled in connection with*, or,

(iii) Operated in connection with, one or more publicly supported organizations.

[Sec. 1.509(a)–4(f)(2), Income Tax Regs.]

Regardless of which relationship exists between the supporting and the supported organization, the regulations require that any relationship must insure that:

(i) The supporting organization will be responsive to the needs of demands of one or more publicly supported organizations; and

(ii) The supporting organization will constitute an integral part of, or maintain a significant involvement in, the operations of one or more publicly supported organizations.

[1.509(a)–4(f)(3), Income Tax Regs.]

Petitioner maintains that one of the requisite section 509(a)(3)(B) relationships has always existed between it and the Winterset Community School District and High School. Essentially, petitioner argues that the relevant provisions of the regulations can reasonably be interpreted so as to allow the fund to qualify as a supporting organization excepted from private

---

[4]Although not found in the statute, the terms "supporting" and "publicly supported" (or "supported") organizations are employed in the regulations. Sec. 1.509(a)–4(a)(5), Income Tax Regs. Under sec. 509(a)(1), publicly supported organizations include any organization described in sec. 170(b)(1)(A). The Winterset Community High School and School District are both integral parts of Winterset, Iowa, a governmental unit described in sec. 170(b)(1)(A)(v).

foundation status, taking into consideration all of the aspects of the fund's relationship to the public school system of Winterset.

The relationship between the Winterset Community School District and High School and petitioner, as originally established by the decedent's will, was clearly not within the purview of the first two relationship categories under section 1.509(a)–4(f)(2), Income Tax Regs. Both of these relationships envision a greater degree of involvement by the supported organization in the affairs of the supporting organization than was present here. In the case of an "operated, supervised, or controlled by" relationship, the regulations require the presence of a substantial degree of direction by the supported organization over the conduct of the supporting organization; i.e., something comparable to a parent-subsidiary relationship. Sec. 1.509(a)–4(f)(4) and –4(g), Income Tax Regs.

Similarly, the relationship between the fund and the school district did not fall within the "supervised or controlled in connection with" language of section 509(a)(3)(B) since the regulations interpret this to require common supervision or control between the supported and supporting organizations; the same persons who control or manage the supported organizations must also control or manage the supporting organization. Sec. 1.509(a)–4(f)(4) and–4(h), Income Tax Regs. Neither form of direction nor control was present, at least prior to the appointment of the three additional trustees on April 6, 1976.

It is petitioner's primary contention that it was "operated in connection with" the Winterset Community School District and High School. The supporting organization's relationship with the supported organization will fall within this category if the requirements of both the "responsiveness test" and the "integral part test" are satisfied. Sec. 1.509(a)–4(i)(1), Income Tax Regs.

The responsiveness test, which is designed to insure that the supported organization will have the ability to influence the activities of the supporting organization, is met if either of the following two subdivisions of section 1.509(a)–4(i)(2), Income Tax Regs., is satisfied:

(ii)(a) One or more officers, directors, or trustees of the supporting organization are elected or appointed by the officers, directors, trustees, or membership of the publicly supported organizations;

(b) One or more members of the governing bodies of the publicly supported organizations are also officers, directors, trustees of, or hold other important offices in, the supporting organization; or

(*c*) The officers, directors, or trustees of the supporting organization maintain a close and continuous working relationship with the officers, directors, or trustees of the publicly supported organizations; and

(*d*) By reason (*a*), (*b*) or (*c*) of this subdivision, the officers, directors or trustees of the publicly supported organizations have a significant voice in the investment policies of the supporting organization, the timing of grants, the manner of making them, and the selection of recipients by such supporting organization, and in otherwise directing the use of the income or assets of such supporting organization.

(iii)(*a*) The supporting organization is a charitable trust under State law;

(*b*) Each specified publicly supported organization is a named beneficiary under such charitable trust's governing instrument; and

(*c*) The beneficiary organization has the power to enforce the trust and compel an accounting under State law.

Petitioner did not comply with the responsiveness test under subdivision (ii) because the school officials had no significant voice in petitioner's investment policies or in directing the use of its income or assets as section 1.509(a)–4(i)(2)(ii)(*d*), Income Tax Regs., requires. Although the Winterset school officials did select the scholarship recipients, such comprises only one of the requirements set forth in this particular section of the regulations.

Respondent argues that petitioner also fails to satisfy the alternative requirements of the responsiveness test listed in subdivision (iii) because neither the Winterset Community School District nor High School was expressly named as a beneficiary under the Will of Nellie Callahan. Sec. 1.509(a)–4(i)(2)(iii)(*b*), Income Tax Regs.[5] However, for reasons hereinafter stated, it is our opinion that there was substantial compliance.

Insofar as we have been able to determine, no court has had occasion previously to consider the ramifications of section 509(a)(3)(B). It is apparent, nevertheless, that there is a certain degree of conceptual overlap between (A) and (B) of section 509(a)(3), and the Court decisions and respondent's interpretative rulings under (A) are to some extent apposite. See *Goodspeed Scholarship Fund v. Commissioner, supra;* Rev. Rul. 75–436, 1975–2 C.B. 217; Rev. Rul. 75–437, 1975–2 C.B. 218. We will indicate, *infra,* why these are apposite.

We deal first with the (*a*) part of section 1.509(a)–4(i)(2)(iii),

---

[5]Cf. Rev. Rul. 75–437, 1975–2 C.B. 218, for a discussion of the responsiveness test with respect to a similar factual situation.

Income Tax Regs. Respondent, having classified petitioner as a private foundation (presupposing exempt status under section 501(c)(3)) on October 20, 1970, and having consistently dealt with petitioner as such ever since, inexplicably asserts in his brief that "Petitioner has failed to include any evidence in the administrative record that it is a charitable trust under state law." We regard such an assertion as disingenuous—the administrative record overwhelmingly demonstrates that both parties proceeded consistently throughout their course of conduct upon the assumption that petitioner was and is a charitable trust under Iowa law, and we so hold. Petitioner thus complies with the (a) part of (iii).

Petitioner also complies with (b) and (c). As quoted above, (b) requires that "Each specified publicly supported organization is a named beneficiary under such charitable trust's governing instrument." This provision of the regulations substantially overlaps the thrust of the organizational test set forth in section 1.509(a)–4(c)(2), Income Tax Regs., namely, that the supporting organization's purposes are "no broader than those permitted under section 509(a)(3)." *Goodspeed Scholarship Fund v. Commissioner, supra.* This is essentially what section 1.509(a)–4(i)(2)(iii)(b), Income Tax Regs., requires as the permissible purposes of a supporting organization set forth in section 509(a)(3)(A) require that the supporting organization must be an organization which "is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more *specified* organizations described in paragraph (1) or (2)." (Emphasis supplied.)

While it may be true, as respondent has stated in Rev. Rul. 75–436, *supra,* that a greater specificity in the designation of the beneficiary is required where a supporting organization is operated "in connection with" a supported organization (as here), we believe that the requirements of section 509(a)(3)(B) are met when the language of the governing instrument is sufficiently unambiguous to leave no doubt as to the supported organization intended to be benefited. In *Goodspeed,* a will provided that the net income of the charitable trust in question was to be used "for the purpose of paying for * * * the education * * * at Yale College of such graduates of Duxbury, Massachusetts, High School" as shall be chosen according to procedures set forth in the will. The will language did not,

however, include the magic words "for the benefit of," "to perform the functions of," or "to carry out the purposes of" Yale University, which the Commissioner viewed as a fatal defect.

In the case before us, respondent argues that pupils selected from the graduating class of Winterset Community High School are not a publicly supported organization within the meaning of section 509(a)(1) or (2). Thus, says respondent, since Winterset Community High School is not the named beneficiary it is clear that petitioner's governing instrument does not name a publicly supported organization as a named beneficiary. Respondent has, nonetheless, in effect resolved the question in petitioner's favor in Rev. Rul. 75–436, 75–2 C.B. 217, where, on similar facts, he ruled that—

In granting scholarships to the graduating class of the public high schools, the trust is benefiting individual members of the charitable class benefited by the city [a sec. 170(c)(1) organization] through its public school system. Thus, the requirement of section 1.509(a)–4(e) of the regulations that the supporting organization be operated exclusively to support or benefit one or more publicly supported organizations is also satisfied.

Under section 1.509(a)–4(e), Income Tax Regs., the making of payments to graduates of Winterset High School constitutes an activity which supports or benefits the high school for purposes of the operational test. Thus, the fund here need not pay over its income directly to the high school or school system in order to meet the operational test so long as the payments are made to individual members of the charitable class benefited by the specified publicly supported organization. See sec. 1.509(a)–4(e)(1) and (2), Income Tax Regs. We fail to perceive the rationale underlying any different results in the operational test and the one before us. If, under the regulations, the making of payments to the high school graduates comprises an activity which benefits the high school for purposes of the operational test, then the high school should similarly be considered a named beneficiary under subdivision (iii) of the responsiveness test.

As we have indicated, there is substantial overlap between sections 1.509(a)–4(e) and 1.509(a)–4(i)(2)(iii)(*b*), Income Tax Regs. Since the only permissible members of the benefited class in the case before us are members of the graduating class of Winterset Community High School, a unit of the municipality which is admittedly a section 170(c)(1) organization, we fail to see how respondent's cause could be aided by the inclusion of the

words in haec verba that the fund be "organized exclusively for the benefit of Winterset Community High School." *Goodspeed Scholarship Fund v. Commissioner, supra.*

As to the (*c*) part of section 1.509(a)–4(i)(2)(iii), Income Tax Regs. (which requires that the beneficiary organization have the power to enforce the trust and compel an accounting under State law), respondent argues only that this section has not been met because the facts in the instant case indicate that there is no beneficiary organization. As our discussion above indicates, we hold that the municipality (of which Winterset Community High School is an integral part) is the beneficiary organization, so respondent's argument on this point must also fail. Furthermore, the administrative record reveals that under section 633.10(4) of the Iowa Code (West 1964) the trustees are accountable to the Madison County District Court, and under section 633.700 (West Cum. Supp. 1979) are required to make a detailed annual report to the court. Such reports are a matter of public record and could no doubt be examined by the school board in the event of default by the trustees. Iowa Code ch. 68A (West 1973). In the event of mismanagement or failure to carry out the trust's charitable purpose, the school district could file a petition for a show cause order to remove the trustees. See Iowa Code sec. 633.65 (West 1964).

We turn now to the integral part test—sec. 1.509(a)–4(i)(3), Income Tax Regs.[6] While the responsiveness test guarantees

---

[6](3) *Integral part test; general rule.* (i) For purposes of this paragraph, a supporting organization will be considered to meet the "integral part test" if it maintains a significant involvement in the operations of one or more publicly supported organizations and such publicly supported organizations are in turn dependent upon the supporting organization for the type of support which it provides. In order to meet this test, either subdivision (ii) or subdivision (iii) of this subparagraph must be satisfied.

(ii) The activities engaged in for or on behalf of the publicly supported organizations are activities to perform the functions of, or to carry out the purposes of, such organizations, and, but for the involvement of the supporting organization, would normally be engaged in by the publicly supported organizations themselves.

(iii)(*a*) The supporting organization makes payments of substantially all of its income to or for the use of one or more publicly supported organizations, and the amount of support received by one or more of such publicly supported organizations is sufficient to insure the attentiveness of such organizations to the operations of the supporting organization. In addition, a substantial amount of the total support of the supporting organization must go to those publicly supported organizations which meet the attentiveness requirement of this subdivision with respect to such supporting organization. Except as provided in (*b*) of this subdivision, the amount of support received by a publicly supported organization must represent a sufficient part of the organization's total support so as to insure such attentiveness. In applying the preceding sentence, if such supporting organization makes payments to, or for the use of, a particular department or school of a university, hospital or church, the total support of the department or school shall be substituted for the total support of the

that the supported organization will have the ability to influence the supporting organization's activities, the integral part test insures that the supported organization will have the motivation to do so. The general thrust of this regulation is that the supporting organization must maintain a significant involvement in the operations of the supported organization so that the latter will be attentive to the supporting organization's operations.

The integral part test, like the responsiveness test, has two alternative sets of criteria. It is clear that the requirements of section 1.509(a)–4(i)(3)(ii), Income Tax Regs., have not been satisfied since there was nothing in the administrative record to indicate that the high school would have been involved in a similar scholarship program in the absence of petitioner's activities.

Subdivision (iii) requires in the alternative, however, that the supporting organization must make payments of substantially all of its income to the supported organization. In the instant case, petitioner has consistently made payments of substantially all of its income for the use of the Winterset Community High School and school system since the fund's sole purpose is to provide scholarships to students graduating from the high school.[7]

Subdivisions (iii) also requires that the amount of support received by the supported organization must represent a sufficient part of its total support to insure its attentiveness to the supporting organization's affairs. There is no indication in the record concerning the total support of either the high school or

beneficiary organization.

(b) Even where the amount of support received by a publicly supported beneficiary organization does not represent a sufficient part of the beneficiary organization's total support, the amount of support received from a supporting organization may be sufficient to meet the requirements of this subdivision if it can be demonstrated that in order to avoid the interruption of the carrying on of a particular function or activity, the beneficiary organization will be sufficiently attentive to the operations of the supporting organization. This may be the case where either the supporting organization or the beneficiary organization earmarks the support received from the supporting organization for a particular program or activity, even if such program or activity is not the beneficiary organization's primary program or activity so long as such program or activity is a substantial one.

[7]As we pointed out earlier in our discussion of the named beneficiary requirement of the responsiveness test, petitioner need not make payments directly to the high school in order for them to be considered for the use of the high school or the school system. See sec. 1.509(a)–4(e)(1) and (2), Income Tax Regs.

the school system. It is apparent, however, that the exception provided in (*b*) of subdivision (iii) is satisfied.[8] Given the relatively small size of Winterset, Iowa, and its public high school, and since the scholarship recipients were selected solely from the high school, we find that the awarding of the scholarships was a substantial activity within the meaning of section 1.509(a)–4(i)(3)(iii)(*b*), Income Tax Regs.

The scholarships mentioned above were awarded as part of the high school's annual graduation exercises and, since 1971, from 6 to 12 students annually have been recipients. The Winterset school system has a substantial interest in the scholarship awards since the high school's guidance counseling function—in particular, assisting students in obtaining scholarships and financial aid for their post-high-school education plans—is advanced by petitioner's activities. Accordingly, we find that the awarding of scholarships is an activity that is significant enough to insure that the high school will be attentive to petitioner's operation and that the integral part test of section 1.509(a)–4(i)(3)(iii), Income Tax Regs., is satisfied.

We thus hold that petitioner meets the "operated * * * in connection with" test of section 509(a)(3)(B) and section 1.509(a)–4(i), Income Tax Regs. In light of this holding, we need not reach the further question raised by petitioner regarding the validity of its claimed termination of private foundation status by virtue of the addition of the public officials as trustees pursuant to the order.

*Decision will be entered for the petitioner.*