# Longwood Gardens Inc. v. Chester County
# Board of Assessment Appeals

C.P. of Chester County, no. 01-00146.

*Thomas A. Riley, Denise R. Yarnoff* and *Jane Richardson,* for appellant.

*Jeffrey R. Sommer,* for appellee.

OTT, *J.,* November 8, 2001—Before the court is the January 4, 2001 appeal by Longwood Gardens Inc. from the December 5, 2000 decision of the Chester County Board of Assessment Appeals, as amended on December 20, 2000, denying Longwood Gardens a real estate tax exemption for its visitors' dining facility, The Terrace Restaurant. Longwood Gardens is a purely public charity within the meaning of the Institutions of Purely Public Charity Act, 10 P.S. §371 et seq., as determined by the Pennsylvania Supreme Court in *Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals,* 552 Pa. 212, 714 A.2d 397 (1998) and the majority of its real estate is already tax-exempt pursuant to 72 P.S. §5020-204(a).

Longwood Gardens owns the restaurant, but contracts with Restaurant Associates, a New York-based for-profit corporation, to manage the restaurant's daily operations. The management agreement provides that Restaurant Associates shall receive, in exchange for services rendered, a "management fee" equal to a percentage of "total sales" and a possible incentive bonus based on a percentage of "actual profits" as those terms are defined in the management agreement.

Longwood Gardens filed an application for a real estate tax exemption with respect to the visitors' dining facility on August 29, 2000, which the Chester County Board of Assessment Appeals denied on December 5, 2000.[1] Longwood Gardens then filed this appeal on January 4, 2001.

The issue before the court is whether the 10 percent profit-sharing incentive plan strips the restaurant of its charitable tax shield as violative of the "private inurement" prohibitions in section 375 of the Institutions of Purely Public Charity Act, 10 P.S. §371 et seq. We held an evidentiary hearing on this matter on July 23, 2001, at which time the parties filed a "submission in lieu of testimony" to establish a factual record. We reopened the proceedings on October 9, 2001, for clarification of issues and further argument.

As referenced above, the Pennsylvania Supreme Court has already determined that Longwood Gardens is a purely public charity within the meaning of the Institutions of Purely Public Charity Act, 10 P.S. §371 et seq., despite the existence of a gift shop and restaurant on the premises. *Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals,* 552 Pa. 212, 714 A.2d 397 (1998). In a passage which I consider of greater import than mere dicta, the court found that the restaurant and gift shop advanced the charitable purposes of the institution. *Id.* I am bound by the court's determination of this mixed question of law and fact. See *Mars Area School Dist. v. United Presbyterian*

---

1. On December 20, 2000, the board modified its decision, changing the valuation of the restaurant as it was listed on the December 5, 2000 notice.

*Women's Ass'n of North America,* 693 A.2d 1002 (Pa. Commw. 1997), *aff'd,* 554 Pa. 324, 721 A.2d 360 (1998) (whether an entity qualifies as a purely public charity for tax exemption purposes is a mixed question of law and fact). However, as evidenced in the antecedent opinion of the Commonwealth Court, the question of the restaurant's eligibility for a tax exemption was not pending before the court. *Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals,* 692 A.2d 1136, 1143 n.15 (Pa. Commw. 1997), *aff'd,* 552 Pa. 212, 714 A.2d 397 (1998).

Authority for taxing the restaurant independently of the gardens can be found in the following provisions. Subsection 375(h) of the Institutions of Purely Public Charity Act, 10 P.S. §371 et seq., preserves the taxing authority's responsibility or prerogative "to make a determination whether a parcel of property or a portion of a parcel of property is being used to advance the charitable purpose of an institution of purely public charity or to assess the parcel or part of the parcel as taxable based on the use of the parcel or part of the parcel for purposes other than the charitable purpose of that institution." 10 P.S. §375(h).

In addition, subsection (b) of the tax exemption statute, 72 P.S. §5020-204, states that "[e]xcept as otherwise provided in clauses (11) and (13) of this section [relating to libraries and fire/rescue stations], all property real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity shall

be subject to taxation, except where exempted by law for state purposes, and nothing herein contained shall exempt same therefrom." 72 P.S. §5020-204(b).

Finally, Article 8, Section 5 of the Pennsylvania Constitution provides that "[a]ll laws exempting property from taxation, other than the property above enumerated (referring to Article 8, Section 2) shall be void." Pa. Const. Article 8, Section 5. Reading these provisions together, it is evident that parcels of property, or portions thereof, which do not meet the constitutional and/or statutory criteria for exemption are subject to tax.

The burden of proving entitlement to a tax exemption is on the party seeking the exemption and it is a heavy one, as tax exemption statutes must be strictly construed. *Community General Osteopathic Hospital v. Dauphin County Board of Assessment Appeals,* 706 A.2d 383 (Pa. Commw. 1998), *aff'd,* 562 Pa. 229, 754 A.2d 679 (2000).

Subsection 375(c) of the Institutions of Purely Public Charity Act, 10 P.S. §371 et seq., discusses the four criteria which must be satisfied for an institution to operate "entirely free from private profit motive." First, "[n]either the institution's net earnings nor donations which it receives inures to the benefit of private shareholders or other individuals." Second, the institution must apply or reserve "all revenue, including contributions, in excess of expenses in furtherance of its charitable purpose or to funding of other institutions which meet the provisions of [section 375(b) and (c)]." The third admonition, that "[c]ompensation, including benefits, of any director, officer or employee is not based primarily upon the financial performance of the institution," is not implicated

here, as Restaurant Associates is neither a director, officer nor employee of Longwood Gardens. Lastly, the fourth requirement holds that the governing body of the institution must have "adopted as part of its articles of incorporation or, if unincorporated, other governing legal documents a provision that expressly prohibits the use of any surplus funds for private inurement to any person in the event of a sale or dissolution of the institution of purely public charity." Longwood Gardens' restated certificate of incorporation satisfies this mandate. (See *Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals,* no. 94-02590 (Chester Cty. 1994), exhibit A-6, pp. 3, 4, 6). Therefore, we will confine our discussion to the issues raised by the first two standards.

The management agreement between Longwood Gardens and Restaurant Associates stipulates that Longwood Gardens shall pay Restaurant Associates a " 'management fee' equal to five percent of 'total sales' generated in connection with activities undertaken by [Restaurant Associates] at The Terrace Restaurant and elsewhere in the food service areas." "Total sales" are defined as "all receipts from the sales of food and beverages in connection with the food service provided by manager . . . , exclusive of all sales taxes attributable to any of the foregoing sales." (Submission in lieu of testimony, exhibit A, ¶6.3). In addition, paragraph 6.5 of the agreement bestows upon Restaurant Associates an incentive bonus "equal to 10 percent of the amount of the actual profit of the food service, before deduction of capital expenses, based upon the actual figures disclosed on the monthly operating statement submitted with respect to the last

month of the preceding initial term or renewal term, as approved by Longwood."

I find nothing objectionable about Longwood Gardens' agreement to pay Restaurant Associates five percent of the restaurant's total sales as compensation for its management services. Five percent is an entirely reasonable emolument for the services rendered. I see no material distinction between five percent of total sales and a payment of a fixed amount as compensation for Restaurant Associates' management services.

It is the 10 percent profit-sharing incentive plan I find troubling. Chief among the requirements for purely public charity status is that the institution must operate entirely free of the private profit motive. "Neither the institution's net earnings nor donations which it receives [may inure] to the benefit of private shareholders or other individuals, as the private inurement standard is interpreted under section 501(c)(3) of the Internal Revenue Code of 1986." 10 P.S. §375(c)(1). Under the Internal Revenue Code, private inurement is construed to preclude a charity from "siphon[ing] its earnings to its founder, or the members of its board, or their families, or anyone else fairly to be described as an insider, that is, as the equivalent of an owner or manager. The test is functional. It looks to the reality of control rather than to the insider's place in a formal table of organization." *United Cancer Council Inc. v. C.I.R.*, 165 F.3d 1173 (7th Cir. 1999).

Although the statutory language contemplates prohibition of all private inurement, "an incidental amount of private benefit is permissible since all 501(c)(3) organizations may be said to benefit individuals through their

activities." Simpson, Steven D., 869 Tax Mgmt., *Tax Exempt Organizations: Organizational and Operational Requirements,* XVA.2, p. A-159 (BNA 2000). "The nature and quantum of the private benefit in comparison with the primary exempt purpose served and the manner in which it is served are the key inquiries." *Id.*

However, the proscription against private inurement "is generally concerned with payments to insiders or other persons other than as reasonable compensation for services actually rendered." *Id.* Upon consideration of these principles and review of the relevant decisional law, I am satisfied that Longwood Gardens' 10 percent profit-sharing incentive plan does not deprive the property in which the restaurant operates of its tax-exempt status.

First, Restaurant Associates is not an insider in the Longwood Gardens corporate structure. Restaurant Associates simply does not exercise the requisite degree of control over the restaurant's operations. Restaurant Associates does not have the ability to influence the restaurant's profitability, other than through the efficiency of its own operations. Generally, the restaurant is not accessible to the public unless they have paid the fee for admission to the gardens. Therefore, it is highly unlikely that people will patronize the restaurant independently of a visit to the gardens or that the restaurant engages in any real competition with area eating establishments. Owing in large part to this factor, there is nothing in the record to indicate that the independent efforts of Restaurant Associates would make a difference in the volume of the restaurant's clientele. The record does not suggest that anything Restaurant Associates does affects sales at

the restaurant. Restaurant Associates does not schedule events or otherwise control or manipulate the use of the restaurant. Restaurant Associates does not control the contents of the menus, the price of the food, or the quality of the inventory. In short, Restaurant Associates has little power to affect the restaurant's revenues one way or the other.

Secondly, the profit-sharing incentive bonus of 10 percent is reasonable under the circumstances. It is acceptable for a charitable organization to remunerate an independent contractor through a contingent compensation plan. For example, in *Broadway Theatre League of Lynchburg, Virginia Inc. v. United States,* 293 F. Supp. 346 (W.D. Va. 1968), the court held that a charitable foundation organized to bring professional theatre to the city was entitled to a tax exemption despite the fact that it contracted with a booking agent to book acts in exchange for 15 percent of the membership dues. Bearing on the issue before this court, the *Broadway Theatre League* court explained,

"It must be kept in mind that the law and the regulations refer to the taxpayer itself. The law and the regulations do not refer to a disassociated corporation who might, for instance, print the advertising for a community chest or the literature explaining the same. These things must be paid for, and the statute does not prohibit or forbid such activities. The evidence in this record shows that taxpayer is not a subterfuge to subsidize associates. There is no connection whatsoever between taxpayer and associates. The statute says '. . . no part of the net earnings of which inures to the benefit of any private shareholder or individual . . . .' I.R.C. §501(c). These

words clearly and without question refer to the corporation contemplated in the first sentence of the statute. They do not refer to a corporation that might be employed to print pamphlets, booklets and literature and to market the same, even though a profit might be involved to Associates . . . . It is not possible to read such into the intention of Congress in passing section 501. If such were the law, it would not be possible to have an exempt organization under the law. Certainly, such was not the intention of Congress, and it is equally clear from the record in this case that no profit accrued to the taxpayer, or to any private shareholder or individual connected with taxpayer." *Broadway Theatre League of Lynchburg, Virginia Inc. v. United States,* 293 F. Supp. 346, 354-55 (W.D. Va. 1968) (quoting *Science and Research Foundation Inc. v. United States,* 181 F. Supp. 526, 529 (S.D. Ill. 1960)).

The court also gave its approval as to the reasonableness of the 15 percent fee. *Broadway Theatre League of Lynchburg, Virginia Inc.,* 293 F. Supp. at 355.

In *National Foundation Inc. v. United States,* 13 Cl. Ct. 486 (Cl. Ct. 1987), the claims court upheld a commission of six percent paid by a charitable foundation to independent fundraisers. In its opinion, the court admonished that "there is nothing insidious or evil about a commission-based compensation system. Indeed, 'such arrangements are a part of business life . . . .' *People of God Community v. Commissioner,* 75 T.C. 127, 133 (U.S. Tax Ct. 1980) . . . . [T]he existence of a contingent compensation arrangement does not preclude tax-exempt status if the arrangement is reasonable." *National Foundation Inc. v. United States,* 13 Cl. Ct. 486 (Cl. Ct. 1987).

I find Longwood Gardens' contingent compensation incentive plan reasonable, under the circumstances. Ten percent is not excessive, particularly in light of the substantial services Restaurant Associates provides. The restaurant itself has operated at a loss for years. In fact, Longwood Gardens as a whole runs at a deficit. The amount of money paid to Restaurant Associates has not been shown to make a difference in the organization's overall profitability. For all of these reasons, I find that the parties' 10 percent profit-sharing incentive plan does not offend the private inurement policy as construed under I.R.C. §501(c)(3) and embodied in section 375(c) of the Institutions of Purely Public Charity Act, 10 P.S. §371 et seq. Therefore, I conclude that Longwood Gardens' Terrace Restaurant is tax-exempt.

## ORDER

And now, November 8, 2001, upon consideration of the January 4, 2001 appeal of Longwood Gardens Inc. from the Chester County Board of Assessment Appeals' December 5, 2000 decision denying tax-exempt status to Longwood Gardens' Terrace Restaurant, as modified on December 20, 2000, the board's response thereto, oral arguments and the parties' submission in lieu of testimony, as well as the briefs and memoranda of law submitted in support and opposition thereof, it is hereby ordered and decreed that said appeal is granted. Longwood Gardens' Terrace Restaurant is exempt from real estate taxes effective tax year 2001.