*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0401p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LAPHAM FOUNDATION, INC.,

        *Petitioner-Appellant,*

    *v.*

COMMISSIONER OF INTERNAL REVENUE,

        *Respondent-Appellee.*

No. 03-1229

On Appeal from the United States Tax Court.
No. 01-03881.

Argued: June 15, 2004

Decided and Filed: November 18, 2004

Before: DAUGHTREY and SUTTON, Circuit Judges; COOK, District Judge.[*]

_____

## COUNSEL

**ARGUED:** James C. Thomas III, HUSCH & EPPENBERGER, Kansas City, Missouri, for Appellant. Francesca Ugolini, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** James C. Thomas III, HUSCH & EPPENBERGER, Kansas City, Missouri, for Appellant. Francesca Ugolini, Kenneth L. Greene, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

    MARTHA CRAIG DAUGHTREY, Circuit Judge**.** The petitioner, Lapham Foundation, Inc., appeals from a Tax Court judgment classifying it as a private foundation under 26 U.S.C. § 509(a)(3). The Tax Court based its decision on a finding that the Foundation did not meet the "integral part" test set forth in 26 C.F.R. § 1.509(a)-4(i)(3). On appeal, the Foundation argues that it does meet the requisite test and is therefore a supporting organization, rather than a private organization. The Commissioner of Internal Revenue, in response, claims that the Tax Court was correct in holding that the Foundation did not meet the "integral part" test and that, even if the Foundation does meet that test, the Tax Court's decision should be affirmed because the Foundation has not shown that it is not controlled by disqualified persons, as required by 26 U.S.C. § 509(a)(3)(C) in order to be classified as a supporting organization. The Tax Court did not address the latter question and, because we conclude that the Tax Court's ruling on the Foundation's failure

_____

[*]The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

to meet the integral part test was correct, we likewise find it unnecessary to address the issue raised under § 509(a)(3)(C).

### FACTUAL AND PROCEDURAL BACKGROUND

Lapham Foundation, Inc. (the Foundation), is a Michigan non-profit corporation, organized under its articles "to operate exclusively for the benefit of the American Endowment Foundation" in a manner intended to "enable [it] to qualify as a supporting organization of the American Endowment Foundation within the meaning of Section 509(a)(3) of the Code." In turn, the American Endowment Foundation (AEF) is an Ohio non-profit corporation that the IRS has recognized both as tax-exempt as an organization described in § 501(c)(3) and as a publicly supported entity under § 509(a)(1). AEF runs a donor-advised fund program through which the donors have the right to advise AEF on how they wish their contributions to be distributed, but AEF is not obligated to follow the recommendations and retains control over the timing, manner, and recipients of the distributions.

The Foundation's sole asset was a promissory note, payable to Charles and Maxine Lapham, in a face amount of $1,554,244. The maker of the note was Estate Storage Co., a corporation owned by the Laphams, and it was collateralized with real estate owned by Estate Storage. The principal amount was due in full no later than December 30, 2013. The interest rate on the note was 7.75%, to be paid in equal quarterly payments of $30,113.48. In exchange for the note, the Laphams received a gift annuity, under which the Foundation agreed to pay them $116,568 annually over their joint lives.

In July 1999, the Foundation filed Form 1023 with the IRS, seeking to be recognized as a tax-exempt organization under § 501(c)(3) and as a supporting organization under § 509(a)(3). The application indicated that the Foundation would support AEF "by receiving and administering funds for the benefit of [AEF]" and listed its sources of financial support as "[d]onations from the Lapham family and its friends, including individuals and businesses," and interest on investments. On a financial disclosure form, the Foundation noted that it had received $1,554,244 in 1998 (the promissory note) and that it expected to receive $5,000 a year in gifts, grants, and contributions in 1999 and 2000. The form also noted that the entity anticipated receipt of $120,454 in gross investment income in 1999 and in 2000, and that it had a gift annuity obligation of $116,568 per year. The Foundation thus expected an excess of revenue over expenses of $8,886 per year for 1999 and 2000. Because it intended to give at least 85 percent of its income to the supported organization, the application estimated a donation of $7,600 annually to AEF.

During the administrative process, the Foundation reported that it would receive outright testamentary gifts of approximately $693,000 at the death of the Laphams, which it estimated would occur in 25.5 years, and that it was the beneficiary of a charitable lead trust under the revocable living trusts of Charles and Maxine Lapham, which, if certain assumptions proved to be true, would distribute $355,834 annually for 17 years after the Laphams' deaths. The report also indicated that the Laphams had pledged an additional $207,733 to the Foundation contingent upon the approval of its status under § 501(c)(3) and § 509(a)(3).

In a later communication to the IRS, the Foundation stated that it would recommend that AEF use one-third of the support provided through the donor-advised fund to expand its representation in Southeastern Michigan, and the remaining two-thirds to support charities in Northville, Michigan. It also estimated that AEF's total annual income was $7,997,910, although the Tax Court later determined that, in 1998, AEF received total contributions in the amount of $7,350,000 but had income of only $650,000.

On April 19, 2000, the IRS recognized the Foundation as exempt from taxation as a § 501(c)(3) organization but determined that it was a private foundation, rather than a supporting organization under § 509(a)(3). In response, the Foundation offered to make various changes in its organizational structure in order to achieve supporting organization status. The Tax Court found it unclear from the administrative record whether any of the proposed changes were actually made, although it appears that the Foundation

did amend its by-laws concerning the make-up of the board of directors. The Foundation nonetheless received an adverse ruling as to its request for a supporting organization classification under § 509(a)(3). The IRS explained that the Foundation had failed to meet the "attentiveness" test under the "integral part" test found in section 1.509(a)-4(i)(3)(iii) of the Income Tax Regulations, and that it had also failed to meet the test for control by disqualified persons set forth in section 1.509(a)-4(j)(1) of the Regulations. The IRS further explained, as to the control test, that the Foundation's primary asset was a promissory note payable by a corporation controlled by disqualified persons and secured by assets of that corporation. It found, therefore, that "[d]isqualified persons are in a position to control [the Foundation] by means of the power they exercise, through their corporation, with respect to [the Foundation's] primary asset."

Dissatisfied with this ruling, the Foundation filed a petition for declaratory judgment in the Tax Court, seeking a determination that it was a supporting organization as described in § 509(a)(3), rather than a private foundation. The case was submitted for a decision on the basis of the pleadings and the administrative record. The Tax Court found that the Foundation did not meet the "integral part" test and, because that decision was fatal to the Foundation's claim that it was a supporting organization, did not reach the issue of whether the Foundation was controlled by disqualified persons.

The Foundation now appeals the Tax Court's determination. In response, the Commissioner argues that if the Tax Court's decision is not upheld on the ground that the Foundation does not meet the "integral part" test, it should be upheld on the ground that the Foundation has not shown that it is not controlled by disqualified persons.

## ANALYSIS

### I. Standard of Review

Under well-settled rules, we review the Tax Court's factual findings for clear error and legal questions de novo. *See Kenco Rests., Inc. v. Comm'r*, 206 F.3d 588, 593 (6th Cir. 2000). The line between the two is not always obvious, however. In this case, for example, the parties dispute whether the issues to be resolved are factual or legal in nature. The Foundation asserts that the facts are undisputed and that the case therefore presents a pure question of law, whereas the Commissioner contends that whether the Foundation is operated "in connection" with AEF, a dispositive question in this case, is a question of fact.

We have held that the determination that an organization is not "organized and operated exclusively for" exempt purposes, for purposes of § 501(c)(3), is a question of fact. *See Ohio Teamsters Educ. and Safety Training Trust Fund v. Comm'r*, 692 F.2d 432, 435 (6th Cir. 1982). It could be argued that the question of whether an organization is operated "in connection" with another organization is similar in kind to the question of whether it is operated exclusively for certain purposes. On the other hand, what is being reviewed here is not actually the existence of a fact, but the application of the law to the facts, a situation requiring de novo review. *See Sherwin-Williams Co. Employee Health Plan Trust v. Comm'r*, 330 F.3d 449, 453-54 (6th Cir. 2003). Although the question is an interesting one, in the end we conclude that we need not decide it here, because the standard of review is not outcome-determinative in this case. Regardless of which standard is employed, the decision of the Tax Court must be affirmed for the reasons detailed below.

### II. Qualification under § 509(a)(3)

Under 26 U.S.C. § 509(a), a § 501(c)(3) organization is a "private foundation" unless it meets one of the exemptions specified in § 509(a)(1)-(4). Private foundations are subject to various taxes, such as an excise tax based on investment income and taxes on self-dealing and failure to distribute income. *See* 26 U.S.C. §§4940-4948. "Public charities [are] excepted from private foundation status on the theory that their exposure to public scrutiny and their dependence on public support [will] keep them from the abuses [of the tax-exempt status] to which private foundations [are] subject." *Quarrie v. Comm'r*, 603 F.2d 1274, 1277 (7th Cir. 1979). The Foundation claims that it should not be classified as a private foundation because it is a supporting organization, as described in § 509(a)(3). Supporting organizations are exempt from

private foundation status "in so far as they are subject to the scrutiny of a public charity." *Quarrie*, 603 F.2d at 1278. "The Treasury Regulations therefore provide that the supporting organization must be responsive to the needs of the public charity and intimately involved in its operations." *Id.*

Under § 509(a)(3), an organization is exempt from private foundation status if it:

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organization described in paragraph (1) or (2),

(B) is operated, supervised, or controlled by or in connection with one or more organizations described in paragraph (1) or (2), and

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2); . . . .

The Commissioner contends that Lapham fails to meet the criteria of subsections (B) and (C); subsection (A) is not at issue in this case.

In order to qualify under §509(a)(3)(B), an organization must be "(i) [o]perated, supervised, or controlled by, (ii) [s]upervised or controlled in connection with, or (iii) [o]perated in connection with, one or more publicly supported organizations." 26 C.F.R. 1.509(a)-4(f)(2). The Foundation claims that it is operated in connection with AEF and therefore fulfills the third of these relationships. However, the Treasury Regulations further elaborate that an organization will only be considered to be operated "in connection with" a publicly supported organization if it meets a "responsiveness test" and an "integral part test." *See* 26 C.F.R. § 1.509(a)-4(i)(1). The Tax Court found that the Foundation's structure satisfied the responsiveness test, and the Commissioner does not challenge that finding on appeal. Thus, the only question that remains with regard to § 509(a)(3)(B) is whether the Foundation meets the "integral part" test.

That test "is designed to insure that the publicly supported organization will be attentive to the supporting organization." *Cockerline Mem'l Fund v. Comm'r*, 86 T.C. 53, 61 (1986). A supporting organization meets the integral part test if "it maintains a significant involvement in the operations of one or more publicly supported organizations and such publicly supported organizations are in turn dependent upon the supporting organization for the type of support which it provides." 26 C.F.R. 1.509(a)-4(i)(3)(i). There are two ways in which an organization can fulfill the integral part test: by meeting either the "but for" test set out in 26 C.F.R. 1.509(a)-4(i)(3)(ii) or the "attentiveness" test described in 26 C.F.R. 1.509(a)-4(i)(3)(iii).

**A. The Attentiveness Test**

The "attentiveness" test focuses on whether the supported organization will be attentive to the supporting operation. In order to satisfy this test, the supporting organization must donate substantially all of its income to the supported organization, and the amount of support received by the supported organization must be "sufficient to insure the attentiveness of such organization[] to the operations of the supporting organization." 26 C.F.R. 1.509(a)-4(i)(3)(iii)(a). In order for the amount of support received to be considered sufficient, either the amount of support must "represent a sufficient part of the [supported] organization's total support so as to insure such attentiveness," *id.*, or it must be demonstrated that "in order to avoid the interruption of the carrying on of a particular function or activity, the beneficiary organization will be sufficiently attentive to the operations of the supporting organization." 26 C.F.R. 1.509(a)-4(i)(3)(iii)(b). "This may be the case where either the supporting organization or the beneficiary organization earmarks the support received from the supporting organization for a particular program or activity, even if such program or activity is not the beneficiary organization's primary program or activity so long as such program or activity is a substantial one." *Id.* In determining whether the amount of support

received is sufficient, "[a]ll pertinent factors, including the number of beneficiaries, the length and nature of the relationship between the beneficiary and supporting organization and the purpose to which the funds are put" will be considered. 26 C.F.R. 1.509(a)-4(i)(3)(iii)(d). "[E]vidence of actual attentiveness by the beneficiary organization is of almost equal importance" with the substantiality of the amount involved in determining the attentiveness of the supported organization. *Id*.

With regard to the first way of satisfying "attentiveness," the Tax Court pointed out that the Foundation anticipated giving only $7,600 per year to AEF in the near future and concluded that such a small contribution was insufficient to ensure AEF's attentiveness. The Foundation argues that the Tax Court erred by over-emphasizing the amount AEF would be receiving in the Foundation's first two years of operation, while failing to take into consideration the nearly $7 million the Laphams had pledged to the Foundation on a long-term basis, at least 85 percent of which the Foundation intended to donate to AEF. It points out that taxpayers often establish charitable-giving programs that are modest during their lifetimes but significant after death, and that such programs are beneficial in that they allow taxpayers to teach a charitable philosophy to their children and help to avoid post-mortem litigation by enabling taxpayers to address potential IRS objections during their lifetimes. The Foundation contends that we should follow the analysis used in *National Foundations, Inc. v. United States*, 13 Cl. Ct. 486 (1987), a case in which a foundation was given § 501(c)(3) status based on proposed activities, and that we allow a "declaratory judgment based upon proposed activities before substantial time and resources have been committed toward actual operations." *Id*. at 495.

Although the Laphams have pledged significant funds to the Foundation, and although the Foundation has indicated that it will distribute at least 85 percent of its future income to AEF, we agree with the Tax Court's determination that the future contributions are not sufficient to fulfill the "attentiveness" test, given how far in the future AEF anticipates receiving them. It is difficult to believe that AEF will give the Foundation the sort of regular oversight contemplated by the test when it will not be receiving substantial support from the organization for another two decades. Furthermore, although the relevant documents recording the various trusts set up by the Laphams are not in the record, it appears that the trust through which the Foundation will supposedly receive $355,834 a year for 17 years is, in fact, revocable. If this is the case, there is no assurance that the Foundation, and through it AEF, will ever receive those contributions. Finally, as the Commissioner has pointed out, once AEF actually receives enough support to ensure its attentiveness, *i.e*., once the Laphams have died and the Foundation begins to receive their funds and make donations to AEF, then the Foundation can petition, under 26 U.S.C. § 507(b)(1)(B), to convert from a private organization into a supporting organization.

With regard to the second method of fulfilling the "attentiveness" test, the Foundation asserts that AEF intends to place contributions from the Foundation in a special account for making grants to support charitable activities in southeastern Michigan in general and in Northville, Michigan, in particular. Without its support, the Foundation argues, the donations in those areas would likely cease. In other words, it is arguing that, without its support, the "particular function or activity" of giving charitable donations in southeastern Michigan would be "interrupted." As the Tax Court points out, however, the regulations specify that the program or activity to which the Foundation has earmarked its funds must be a "substantial" one; it must be important enough to the supported organization that the fear of its loss will cause the supported organization to be properly attentive to the supporting organization. Supporting charitable organizations in Michigan is not a substantial part of AEF's work. In 1998, for example, of $1,300,000 it distributed to organizations similar to those the Foundation proposes to recommend, AEF distributed only $5,500 in Michigan. Furthermore, the Foundation's contributions can hardly be said to be earmarked for a specific program or activity when the Foundation has simply named a geographic area in which it wants the funds to be spent, rather than naming specific charities to which it wants the funds distributed and when, in any case, AEF does not have to abide by the Foundation's recommendations.

Finally, the Foundation claims that it has demonstrated actual attentiveness on the part of AEF. In particular, it points out that AEF appointed one of the Foundation's directors, that this director has access to all of the Foundation's financial information, that the Foundation sends financial reports to AEF, and that the Foundation and AEF have had ongoing communications. Although 26 C.F.R. 1.509(a)-4(i)(3)(iii)(d) uses the imposition of the requirement that the supporting organization furnish reports to the supported organization as an example of evidence of actual attentiveness, there is no evidence here that AEF requires the Foundation to furnish such reports, nor that the requirement is in the Foundation's by-laws or articles of incorporation. Absent more specific evidence about the communications between the Foundation and AEF, we, like the Tax Court, "remain unconvinced that the [] features highlighted portend the type of ongoing monitoring and attentiveness envisaged in the regulation."

For all these many reasons, we conclude that the Tax Court was correct in finding that the Foundation does not meet the "attentiveness" test.

## B. The But-For Test

The "integral part" test is also fulfilled if "[t]he activities engaged in for or on behalf of the publicly supported organizations are activities to perform the functions of, or to carry out the purposes of, such organizations, and, but for the involvement of the supporting organization, would normally be engaged in by the publicly supported organizations themselves." 26 C.F.R. 1.509(a)-4(i)(3)(ii). We conclude that the Foundation does not meet this test any more than it meets the "attentiveness" test. To begin with, it is unclear that the Foundation is engaging in any activity "for or on behalf" of AEF, given that its only activity is contributing money to AEF. Even if donating money to AEF was considered an activity "for" AEF, it is not an activity AEF itself would be doing but for the Foundation. The Foundation similarly fails the but-for test if its activity is viewed as giving grants to charitable organizations, which it does by giving money to its donor-advised fund at AEF. As the Tax Court pointed out, "such grant-making activities cannot properly be characterized as something in which AEF *would be* engaged *but for* petitioner's support. Rather, distributing grant moneys is something in which AEF *is* and will continue to be engaged *regardless* of support from petitioner." If the Foundation's activity is construed as giving grants within Southeastern Michigan, it still cannot be said that but for the Foundation's involvement, AEF would engage in the activity itself. As described above, absent significant funding from the Foundation, AEF distributes very little money in Michigan.

### *CONCLUSION*

Because we agree with the Tax Court's determination that the Foundation fails to qualify as a supporting organization under 26 U.S.C. § 509(a)(3)(B), we also conclude that it is unnecessary to address the contention that the Foundation also fails to qualify under subsection (C). The failure to meet the requirements of any one of the three subsections of § 509(a)(3) is a sufficient basis on which to deny the petitioner status as a supporting organization. For the reasons set out above, we AFFIRM the judgment of the Tax Court in all respects.